UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

BRUCE CHARLES DURAND,            Case No. 23-12043-11
                                 (Jointly Administered)
    Debtor.

DURAND LAND HOLDINGS, LLC,       Case No. 23-12045-11

    Debtor.

## **MEMORANDUM DECISION**

Debtors Bruce Charles Durand and his entity Durand Land Holdings, LLC ("DLH") (collectively "Debtors"), filed voluntary Chapter 11 petitions in November 2023. Creditor Newtek Small Business Finance, LLC ("Newtek"), filed a motion for relief from stay. Debtor objected and the Court held a final hearing on March 14, 2024.

### **FACTS AND BACKGROUND**

Debtors filed voluntary Chapter 11 petitions on November 14, 2023. The cases were ordered to be jointly administered on February 8, 2024. The cases are not substantively consolidated.

Mr. Durand's case was designated as the lead case, but each Debtor was ordered to file its own separate schedules, statement of financial affairs, and monthly operating reports, and pay quarterly fees (if applicable). Proofs of claims were ordered to be filed in the case or cases to which they relate. No

Monthly Operating Reports have been filed for DLH so there is no evidence in the record that it has any income, nor are its expenses in evidence.

*Bruce Durand's Statements and Schedules*

Bruce Durand submitted a summary of assets and liabilities, statement of financial affairs, and schedules on December 11, 2023. He lists $1,116,300.00 in real property and $1,297,959.13 in personal property, for a total value of $2,414,259.13. Liabilities are scheduled at $5,927,659.31 in secured debt and $7,104,767.02 in nonpriority unsecured debt, for a total of $13,032,426.33.

Mr. Durand lists five pieces of real property. One property is a warehouse located at 625 4th Street, Chetek, Wisconsin, with an estimated fair market value of $248,900.00. This is the subject of the motion for relief from stay before the Court.

The others are:

- A single-family home located at 2040 21 15/16 Street, Rice Lake, Wisconsin, with an estimated fair market value of $401,500.00. He says he is a "100% owner." This is the subject of the claim of a homestead exemption.

- Another single-family home located at 17082 Cty. Hwy Q, Bloomer, Wisconsin, plus 15 acres. The estimated fair market value of the property is $450,900.00. Mr. Durand states that this property is a "100% Homestead." It's unclear whether Mr. Durand lives at this

house or at the house located in Rice Lake, because although this property is noted to be a "homestead," he uses the homestead exemption on his Schedule C to exempt his interest in the Rice Lake house.

- And two properties are described as "Farmland behind 305 Cty. Hwy. AA" in New Auburn, Wisconsin, with estimated fair market values of $9,100.00 and $5,900.00, respectively.

Apparently Mr. Durand owns at least one additional property in South Dakota based on amended schedules filed on March 13, 2024. He values it on the amended schedules as $586,000.00 and owes a previously unscheduled creditor on the property as well as Newtek.

Finally, Mr. Durand holds an interest in five entities:

- Terri Durand Trucking, Inc., with an unidentified percent ownership interest valued at $812,353.17;

- Durand Land Holdings, LLC ("DLH"), with a 50% ownership interest valued at $163,863.74;

- Badger State Recovery, Inc. ("BSR"), with a 50% ownership interest valued at $89,552.21;

- BSR Transport, Inc. ("BSR Transport"), with a 50% ownership interest valued at $0; and

- Frontier Sand, LLC, with a 100% ownership interest valued at $0.

3

Each of these entities are listed as codebtors.

It appears Mr. Durand has wages of $5,100.00 a month from some source and $4,080.67 in take-home pay. He also has $3,386.00 a month in Social Security income, for a total monthly income of $7,466.67. His monthly expenses are $7,986.00. Thus, he has an average monthly deficit of $519.33. Despite the ownership of the Chetek property, his schedules reflect no rental income from the property.

While the Monthly Operating Reports bear both debtor names and case numbers, it appears that they reflect only information about Mr. Durand. The Monthly Operating Reports attach banking information only for Mr. Durand. The net income for the period ending December 31, 2023, was $1,928.54 and for the report dated January 21, 2024, it was -$1,075.77.

BSR Transport and BSR both operate from the Chetek property. BSR Transport does not demonstrate payment of any rental expenses for use of the property. The BSR profit and loss statement suggests there was rental expense of $57,335.00 through November 2023, although none has been paid directly to Mr. Durand nor has any of this been paid to Newtek, the primary secured creditor.

No tax returns have been filed for 2021, 2022, or 2023 for Mr. Durand.

*Durand Land Holdings' Statements and Schedules*

DLH submitted a summary of assets and liabilities, statement of financial affairs, and schedules on December 12, 2023. It lists $0 in real

property and $54,583.63 in personal property. For liabilities, DLH lists $5,300,000.00 in secured debt and $0 in nonpriority unsecured debt.

Even though DLH lists $0 in interest in real property, in its summary of assets and liabilities it also submitted an exhibit to the schedules showing ownership interests in four properties. There's no reported fair market value listed for any property, but DLH lists the mortgage holders and acreages. The total acreage for the properties is listed as 106.9.

The DLH personal property consists of $1,347.03 in a checking account, $6,940.37 in accounts receivable of 90 days or less, and $46,296.23 in accounts receivable of 90 days or more.

DLH did not submit any statement related to its income or expenses. There are no Monthly Operating Reports; thus the record does not show any income for DLH.

### *Newtek Small Business Finance's Motion for Relief from Stay*

Newtek seeks relief from stay with respect to Mr. Durand's property located in Chetek, Wisconsin. Newtek obtained a foreclosure judgment against the property in September 2021, along with a money judgment against Mr. Durand and foreclosure judgments against several other properties. Newtek scheduled and conducted a sheriff's sale of the Chetek property on September 19, 2023. Newtek was the only bidder with a credit bid of $1,462,000.00 and was poised to confirm the sale on November 15 before the Chippewa County Circuit Court. Mr. Durand filed his bankruptcy petition on November 14.

Newtek filed the motion for relief from stay arguing that in the time since the petition was filed, neither of the Debtors has moved the case forward. Neither has any adequate protection been paid.

Mr. Durand objects to the motion theorizing that the basis is § 362(d)(1)—a lack of adequate protection. Mr. Durand has not paid Newtek any adequate protection for its interest in the Chetek property. Mr. Durand says the property is worth $248,900.00 in his opinion. His estimate is based on his purchase price in 2004 and his belief that deferred maintenance and the market mean the property has not increased in value. Mr. Durand also states that he plans to pay Newtek monthly adequate protection payments of $1,970.46, which amounts to 9.5% interest on his estimate of the property's value. This offer was made on February 21—months after the petition date and three weeks after the motion for relief from stay.

Based both on its bid at a sheriff sale and on the appraisal conducted by Mr. Owens, Newtek says the property value is $1,460,000.00. If so, simple interest at 9.5% would be $11,558.33 per month.

Newtek focuses primarily on the provisions of § 362(d)(2). Mr. Durand concedes he has no equity in the property. Thus, under 362(d)(2) the only issue is whether the property is necessary for an effective reorganization and that reorganization is feasible within a reasonable time.

Mr. Durand posits that the property is necessary for Debtors' reorganization because it is the primary place of business of BSR Transport

6

and BSR. These two businesses are Mr. Durand's primary source of income and would be crucial to funding any plan "by paying rent for their use of Durand's property." He says he plans to pay Newtek monthly adequate protection payments of $1,970.46. He now also proposes other adequate protection payments for various creditors.

Section 362(d) provides that relief from the automatic stay may be granted for cause, including lack of adequate protection, or if the debtor has no equity in the property <u>and</u> it's not necessary for an effective reorganization.

No adequate protection was proposed or offered in the first three months of the case. There is no evidence that the Debtors have sufficient income to pay the since-proposed interest-only total adequate protection payments on all of the secured claims. The proposed amount totals $21,438.15. Mr. Durand's monthly income is only about $8,000.00 at most according to the schedules. There is no evidence that DLH has any income. Of course, the profit and loss statements from BSR and BSR Transport suggest some income. The BSR Transport Form 426 says that for the period January through November 2023 it has $582.23 in net income and no rental expense. Terry Durand Trucking doesn't use the Chetek property but reflects rental expense of $9,627.42 used to pay Security Bank for payments owed by DLH.

BSR does use and occupy the Chetek property. Its profit and loss for January through November 2023 suggested $8,879.83 in net income. This document says it had rental expenses of $57,335.60 ($5,212.32 per month)

7

that apparently was used to pay unspecified amounts to creditors of either Mr. Durand or DLH. None was paid to Newtek.

These amounts are insufficient to make the proposed adequate protection payments. To address the shortfall, Mr. Durand says that he might surrender the South Dakota property, thus reducing the amount of proposed adequate protection. Even if payments related to the South Dakota property are eliminated, there is insufficient income available. The next approach suggested by Mr. Durand would be to "charge rent." But no information about the amount of such rent, the payor, or the ability to pay was presented. Adjusted to delete South Dakota, the proposal would still require $15,091.00 per month. That also assumes the value estimates of Mr. Durand are correct.

And the Debtors' proposal fails to address future property taxes. Mr. Durand is delinquent on his taxes, and in the four months since filing has not employed an accountant or filed his delinquent tax returns. The 120-day exclusivity period to file a plan has run.

Mr. Durand has stipulated that there is no equity in the Chetek property. *See* Stipulation, ECF No. 86, ¶ 12.

## DISCUSSION

Code section 362(d) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

8

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

    (2) with respect to a stay of an act against property under subsection (a) of this section, if—

        (A) the debtor does not have an equity in such property; and
        (B) such property is not necessary to an effective reorganization.

Subsection (g) of section 362 states that the party requesting relief from stay has the burden of proof on the issue of the debtor's equity in the property, and that the party opposing relief from stay has the burden of proof on "all other issues."

1. <u>Cause, Including Lack of Adequate Protection</u>

Newtek argues that its interest in the Chetek property is not adequately protected. Newtek states that Mr. Durand has not made any voluntary payments against the amounts due under the Guarantee, Mortgage, Judgment, or Amended Judgment in over four years. Newtek believes that his schedules and other filings reveal he has no funds to make such payments.

In his objection, Mr. Durand offers to pay monthly adequate protection payments of $1,970.46—9.5% interest on a principal balance of the property's value of $248,900.00. He expanded on this proposal in his motion to use cash collateral and pay adequate protection. In total, between them the Debtors propose monthly adequate protection payments of $21,420.15. This total monthly payment consists of these amounts: $158.33 per month to Royal

Credit Union; $11,297.90 per month to Security Bank; $8,687.26 per month to Newtek; and $1,294.66 per month to "Interstate."

Mr. Durand has provided no evidence other than his opinion to support his claim that the value of the Chetek property is $248,900.00. In contrast, Newtek has submitted an appraisal valuing the property at $1,460,000.00 (Newtek's Exhibits, ECF No. 78, Ex. 6). Further this amount was bid at a sheriff sale.

Newtek objected to the Debtors' motion to use cash collateral and pay adequate protection. It argues that the minimum amount required to adequately protect Newtek's interest in the Chetek property alone (using the Debtors' proposed 9.5% interest rate) would be about $11,574.16 per month.

Mr. Durand's schedules do not support his ability to make any adequate protection payments. His expenses exceed his income. DLH failed to submit any statement of monthly income and expenses, or any Monthly Operating Reports. He says he will obtain funds to make these payments from rent to be received from "his other companies" in amounts sufficient to make the proposed payments. His other companies (for which he's submitted periodic reports) include BSR Transport, Inc., Terri Durand Trucking, and Badger State Recovery, Inc. But it's unclear which of these entities will make rental payments sufficient to cover the proposed adequate protection, and in what amounts.

The reports for all three of the entities (ECF Nos. 37, 38, and 39) contain no evidence that any of the entities have sufficient cash flow to make rental payments in the amounts proposed. For example, in the report filed for BSR, the business reported annual net income of $8,879.83 as of November 2023. Included in its expenses were rental expenses of $57,335.60, which breaks down to $5,212.32 a month. It's unclear if the rental expense is linked to Mr. Durand or another party. If it represents the rent "paid" to him, this only accounts for 24% of the proposed adequate protection payments. The testimony made clear this was not paid to Mr. Durand or Newtek. It is, at least in part, cash collateral attributable to Chetek based on the testimony.

The report filed for BSR Transport reported net income of only $582.23 as of November 2023, and does not list any rental expenses or secured debt payments. Similarly, the report filed for Terri Durand Trucking, Inc., reported rental expenses for January through November 2023 of only $9,627.42, which is only $875.22 a month. None of these amounts were paid to Mr. Durand. Other than vague testimony that some may have been paid to DLH and then to a creditor, there is no confirmation of how the funds were disbursed. These amounts are not enough to pay even 5% of the proposed adequate protection payments. The profit and loss for Terri Durand Trucking, Inc., also did not report any payments for secured debt payments. It reported net income of only $12,202.33 as of December 15, 2023. The monthly operating reports on file

also do not evidence an ability to make the proposed adequate protection payments.

There are two competing value opinions—Mr. Durand who opined the value today is the same as the value paid 20 years ago to purchase. His opinion is based on his belief:

(1) there are significant repairs needed, including to the roof, and because five years ago he says he paid $50,000.00 for roof repairs but more is needed it would probably cost $500,000.00, and

(2) that while there are 12-foot ceilings, in some sections with beams the ceiling height is only 10 feet.

The other value opinion is that of a qualified expert. The expert used both a cost approach and comps in reaching the $1,460,000.00 value. The cost approach considered useful life of this type of building with remaining life, adjusted down for depreciation, and uncurable items of 44.4% of value.

There is also one other measure of value—the price bid at a properly conducted sheriff sale—$1,460,000.00. This is the most accurate estimate because it is the amount a bidder is willing to pay (even if a credit bid).

At $1,400,000.00, interest only would be $135,050.00 per year or $11,254.20 per month.

The value of the Chetek property is $1,460,000.00. The proposed adequate protection is inadequate. Mr. Durand's testimony about value and the ability to pay adequate protection lacked any credibility. Mr. Durand has not

satisfied his burden of establishing adequate protection for Newtek exists. Neither has he established any likelihood it is possible. Thus 11 U.S.C. § 362(d)(1) does not support denial of the motion.

2. <u>Lack of Equity in the Property and Not Necessary for an Effective Reorganization</u>

    a. *Lack of Equity*

Debtor has stipulated that "the amount of Newtek's claim against the Property exceeds the value of the Property, and therefore the Debtor does not have equity in the Property." (ECF No. 86.)

Mr. Durand has not argued that he has equity in other property sufficient to cover the value of Newtek's secured claim. The nature and number of the properties of both debtors, as well as the true owner of various properties, is unclear. As noted above, Mr. Durand states that he owns five properties. His schedules value total assets of around $2,196,703.00. Secured debts are listed at $5,927,651.00.

DLH listed a $0 interest in real property yet it attached a spreadsheet stating that it was the owner of 11 parcels, split between four properties, consisting of 106.9 acres, with no valuations included. At any rate, its Schedule D states that Security Bank has a $300,000.00 first position lien on the 106.9 acres, and Newtek has a $5,000,000.00 second position lien. But again, without knowing the value of the property, it's impossible to determine whether the Debtor has any equity.

13

The state court's foreclosure judgment (ECF No. 78, Ex. 3) notes six mortgages on seven properties owned by these parties. It appears Debtors have absolutely no equity in any property based on the schedules since the value of the properties per the Debtors is $2,196,703.20 while the debt totals $5,927,651.00.

It is not the job of the Court to guess or to try to divine or reconcile the various documents.

    b.  *Not Necessary For an Effective Reorganization*

Under the second prong of section 362(d)(2), it is Mr. Durand's burden to show that the property is necessary for an effective reorganization. *See* 11 U.S.C. § 362(g)(2). Mr. Durand's only statement in support of this element is that it is the primary place of business of BSR Transport and BSR. He says that "these two businesses are Durand's primary source of income and will be crucial to funding any plan, by paying rent for their use of Durand's property." (Objection to Motion for Relief, ECF No. 62.) His wage income is $5,100.00 per month and $3,386.00 per month in Social Security.

To show that the property is necessary for an effective reorganization, a debtor must show both of the following: (a) reorganization is impossible without the property; and (b) reorganization is *feasible* within a *reasonable* time. *In re Century Inv. Fund VIII Ltd. P'ship*, 155 B.R. 1002, 1006 (Bankr. E. D. Wis. 1989), *aff'd on other grounds*, 937 F.2d 371 (7th Cir. 1991).

Stated another way, "[w]hat this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988). Under this test, therefore, relief from the stay should be granted if the debtor has no reasonable likelihood of reorganization. This might occur, for example, because reorganization of the business is not feasible or because creditor dissent makes a successful plan unlikely. *Id.* "And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, . . . even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief." *Id.* at 376.

Courts in the Seventh Circuit have referred to the ruling from *Timbers of Inwood Forest* as the "feasibility standard." *See, e.g.*, *In re 8th Street Village Ltd. P'ship*, 94 B.R. 993 (N.D. Ill. 1988). In *8th Street Village Ltd. P'ship*, the Seventh Circuit explained that

> [I]t seems pointless and wasteful to deny a stay because of the relationship of certain property to a reorganization that will never occur, which would be the result in any case where the necessity standard, but not the feasibility standard, would prevent relief from the automatic stay. Even if the word effective was not in the statute, a similar construction would result. A condition is not necessary to a result if that result will not occur even if the condition is satisfied— i.e., a piece of property is not necessary to a reorganization if a reorganization will not occur even if the property remains in the estate.

15

A debtor also fails to show necessity of the property for an effective reorganization if the debtor's plan is unsupported by credible assumptions and projections that offer some basis for confidence that the plan could succeed.

Mr. Durand's argument can be viewed as saying the language of § 362(d)(2)(B) says relief may be granted if the property is not necessary for an effective reorganization and this means simply that if the debtor needs the asset, that may prevent stay relief from being granted. The Supreme Court has held to the contrary finding that proof of a reasonable possibility for a successful reorganization is required. *Id.*

A debtor's burden of showing a reasonable possibility within a reasonable time increases with time. During the early stages of a case, a less detailed showing may be sufficient. But as the case progresses, that task becomes harder. Even at the start there must be some "faint outline of a plan." *In re BB Island Cap., LLC*, 540 B.R. 16 (Bankr. D. Mass 2015), *aff'd*, No. 15-13963-GAO, 2015 U.S. Dist. LEXIS 166365 (D. Mass. Dec. 11, 2015).

While a somewhat different analysis of whether a plan is feasible is used for the purpose of granting relief from stay than in determining whether to confirm a plan, a reorganization plan that is wholly speculative and unconfirmable does not satisfy the debtor's burden. In this case there is no outline of a plan. No projections have been provided. There is no evidence that any plan terms have been thought about that would satisfy the requirements for confirmation. The scheduled secured debt dwarfs the scheduled value of

16

assets and the evidence about available funds for a plan is insufficient for even interest-only payments.

While the Chetek property is the principal source of funds for Mr. Durand, he has not demonstrated that its retention would be sufficient for the potential sums needed to fund a plan of any sort. Even though Mr. Durand states that most of his income derives from his work at BSR, and that the Chetek property is the primary place of business for BSR and BSR Transport, he has not shown that an effective reorganization is in prospect within a reasonable time.

Under 11 U.S.C. § 1129, to confirm a plan Newtek will have to receive on account of its interest in the property value of at least as much as it would receive in a Chapter 7 case. *See* 11 U.S.C. § 1129(a)(7)(A)(ii). Here, there is no conceivable way Mr. Durand will be able to confirm a plan that will pay Newtek the value of its interest in the Property, especially considering Newtek's valuation in excess of its sheriff's sale bid of $1,462,000.00.

At trial, the only basis Mr. Durand provided in support of his position was that he would collect more rent from his other entities to pay adequate protection, and that he was open to selling or surrendering the South Dakota property. But his testimony on these points does not overcome the opposing evidence in the record. As explained, the reports submitted by Debtors' other entities reflect that they don't have sufficient cash flow to make adequate protections payments, even at the lower amounts proposed in Debtors' motion.

If there are not enough funds for adequate protection, there are not funds to support a plan.

And Mr. Durand's reluctant offer to sell the South Dakota property is ostensible at best. Not only did he "forget" about the property in the first four months of the case, but the primary secured lender on the property, First Interstate Bank, seemingly didn't received notice of these proceedings until recently. No timeline for the sale of the property was offered. There was simply a representation that Mr. Durand might sell it down the road. Such a representation, at this stage, is not enough to show the feasibility of an effective reorganization.

Mr. Durand has taken no meaningful steps to advance his case since filing over four months ago. Neither has DLH. Not until three months after the case was filed, and three weeks after Newtek moved for relief from stay, did he seek to employ an appraiser. The application to employ the appraiser is subject to objection based on several financial inconsistencies between the proposed service contract and the Debtors' financial records. No appraiser has yet been employed.

The Debtors now face a motion to dismiss or convert the case from the U.S. Trustee. (ECF No. 82.) And the 120-day exclusivity period for filing a plan has run, with no plan in sight.

In sum, in the four months since filing the case the Debtor has not shown a reasonable prospect for a timely reorganization. Thus, he has not met his burden to show that the property is necessary for an *effective* reorganization under section 362(d)(2).

## CONCLUSION

Newtek's motion for relief is granted.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: March 20, 2024

>BY THE COURT:
>
>_____
>Hon. Catherine J. Furay
>U.S. Bankruptcy Judge